red, however, that because we are reluctant to dismiss without passing on the merits we think that error was committed in the court below.

Appeal dismissed.

---

## N. P. SLOAN CO. v. CHURCHILL LINE et al.

(Circuit Court of Appeals, Second Circuit. December 19, 1924.)

No. 25.

**1. Shipping ⊂⊃108—Carrier excused by withdrawal of approval of French High Commission.**

Under provision of contract for transportation of cotton to France, by certain boat, that contract is subject to approval of the French High Commission, carrier is protected from liability for noncarriage by the Commission's withdrawal of its original approval.

**2. Shipping ⊂⊃108—Carrier excused by governmental interference; "shipment."**

Clause of contract for transportation of cotton to France, by certain boat, that owing to war conditions shipment is accepted at owner's risk of any interference by any power, excuses carrier, where the French High Commission took all the space on the boat for the benefit of its government, and refused to allow the shipment thereon; the word "shipment" applying as fully to interference with shipment accepted but not loaded as with a shipment actually put aboard.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Shipment.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by the N. P. Sloan Company against the Churchill Line, which brought in Schneider & Cie. From an adverse decree, libelant appeals. Affirmed.

The opinion of Ward, Circuit Judge, in the District Court, is as follows:

December 31, 1917, the libelants entered into a freight contract for the transportation of 5,000 bales of cotton on board the Norwegian steamer Flores "expected to arrive about the middle of March," to be transported from Savannah to Havre.

The material provisions of the contract are as follows:

"This contract is subject to approval of the French High Commission."

"Owing to conditions of war or hostilities existing and threatened this shipment is accepted at the sole risk of owners thereof of arrest, restraint, capture, seizure, detention or interference of any sort by any power.
* * * *"

In January, 1918, the libelant did obtain permit No. 48 for the shipment from the French High Commission at Washington and delivered the same to the Churchill Line. The High Commissioner of the French Republic to the United States wrote:

"January 12, 1918.

"To Messrs. N. P. Sloan & Company, 310 Chestnut Street, Philadelphia, Pa.—Dear Sirs: I beg to acknowledge receipt of your three letters dated January 11th, and I send you herewith permit No. 48 covering shipment of 5,000 bales of cotton to France.

"I hereby certify that five thousand (5,000) bales of cotton covered by licenses 775 and 764 and consigned to Comptoir National d'Escompte de Paris Havre, and to be shipped by Messrs. N. P. Sloan Company, 310 Chestnut, Philadelphia, Pa., per Norwegian steamer Flores (Churchill Line), at the rate of eleven dollars ($11) per hundred pounds, freight booked on the 31st of December, 1917, said steamer expected ready to load at Savannah about middle of March, 1918, are in compliance with the French Regulations issued on November 22, 1917, and, therefore, their shipment to France is authorized."

The word "November" evidently should be "December," reference being to the decree of that date, Exhibit 1a.

January 23, 1918, the Churchill Line wrote to the J. H. W. Steele Company, who had taken space, as follows:

"We beg to advise you that we have just received notification that the S. S. 'Flores' has been requisitioned by the government, and therefore engagement No. 1505 for 5,000 bales cotton made through you for account of N. P. Sloan Company is canceled. Would suggest that you inform shippers immediately by wire regarding this.

"We regret very much to have to cancel the engagement, but, under the circumstances, there is nothing else to be done."

Thereafter both parties made all possible efforts to get the French government to permit the shipment, but without success. The French High Commission in the United States, appointed in pursuance of the decree of April 15, 1917, took up all freight space on the steamer for her fifth voyage from Savannah to France for the benefit of the French government, shipping 1,700 tons of cotton for its account at a freight rate of $5 per 100 pounds instead of $11, which the libelant had agreed to pay. There could be no plainer revocation of its original permit.

The libelant brought this suit against Churchill Line to recover damages sustained by it in shipping the cotton at a higher rate of freight, and the Churchill Line brought in Schneider & Cie, as its principal, under the fifty-ninth rule in admiralty.

[1, 2] Assuming, as the libelant contends, that Steele & Co. were the agents of the Churchill Line and that the libelant did not know and were not told that the Norwegian steamer was chartered to Schneider & Cie, a French firm doing business in Paris, I think the libelant is not entitled to recover.

All parties clearly understood that for some reason the consent of the French government, to the shipment had to be obtained. The original permit referring to the regulations of December 22d (not November 22d) shows that the steamer was at the disposal of the French government; France could refuse to permit shipment to its ports even on neutral vessels. It is equally clear that the French High Commission withdrew its original approval. The French government made no contract with any one and could not be held if it had. It had a right to change its mind for any reason satisfactory to it. Determinations of sovereigns are absolute, whether they are right or wrong. Therefore I think the Churchill Line is protected from liability by the provision of the contract making the contract subject to the approval of the French High Commission and also by the provision that the shipment was accepted at the sole risk of the owners thereof of interference of any sort by any power. The word "shipment" applies as fully to interference with a shipment accepted but not loaded as with a shipment actually put aboard.

The libelant says that there is no proof that the sailing in June was the fifth voyage of the steamer. It was the fifth voyage between Baltimore and France. It was so stipulated at the trial, and there was no such voyage in March. The contract was canceled by the Churchill Company in January, and it is of that cancellation that the libelant complains. It makes no difference to the case it presents whether the steamer ought to have arrived in March and did not arrive until May or June. The question is whether the Churchill Line under its terms is excused from carrying out the contract. I think it is. The libel is dismissed, as is the petition bringing in Schneider & Cie.

June 20, 1923.

Macklin, Brown & Van Wyck, of New York City (Horace L. Cheyney, of New York City, of counsel), for appellant.

Haight, Smith, Griffin & Deming, of New York City (Clarence B. Smith and Frank A. Paul, both of New York City, of counsel), for appellees.

Before HOUGH and MANTON, Circuit Judges, and LEARNED HAND, District Judge.

PER CURIAM. Decree affirmed, upon the opinion of Ward, Circuit Judge.

---

## CORNELIUS v. C. C. PICTURES, Inc.

(Circuit Court of Appeals, Second Circuit. January 5, 1925.)

No. 229.

1. **Courts ☞363, 366(18)—Federal court determining validity of chattel mortgage held bound by statute and decisions of state wherein transaction took place.**

Federal court, determining validity of chattel mortgage, transactions concerning which took place in New York, *held* obliged to follow Lien Law N. Y. § 230, and decisions of New York courts.

2. **Chattel mortgages ☞191—"Actual and continued change of possession" not accomplished, where chattels remain in possession of tenant or successor in title.**

Under Lien Law N. Y. § 230, declaring unrecorded chattel mortgages invalid unless accompanied by immediate delivery and change of possession, where third person, in whose physical possession mortgaged chattels remain, is tenant of mortgagor or his successor in title, there is not an actual and continued change in possession.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Actual and Continued Change of Possession.]

3. **Chattel mortgages ☞191—Actual and continued change of possession of mortgaged chattels validating unrecorded mortgage held established.**

Where firm with which cinema films were stored was notified of mortgage and told to make prints only on mortgagee's orders, and indorsed on its records a notation to that effect, *held*, that there was an actual and continued change of possession within Lien Law N. Y. § 230, sufficient to validate mortgage though not recorded.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by Harold A. Cornelius against C. C. Pictures, Inc., wherein Jacob Wener intervened, claiming chattel mortgage lien on certain cinema negatives. From an order sustaining the validity of intervener's mortgage,